IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

FILED
IN OPEN COURT

JUL 2 2 2020

CLERK U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | No. 1:20-CR-167 |
| | ) | |
| v. | ) | Counts 1-5: 18 U.S.C. §§ 1343 and 2 |
| | ) | (Wire Fraud) |
| DANIEL BOICE, | ) | |
| | ) | Count 6: 15 U.S.C. §§ 78j(b); 78ff; 17 |
| | ) | C.F.R. § 240.10b-5 (Securities Fraud) |
| | ) | |
| | ) | Counts 7-8: 18 U.S.C. §§ 1957 and 2 |
| Defendant. | ) | (Unlawful Monetary Transaction) |
| | ) | |
| | ) | Forfeiture Notice |

## INDICTMENT

July 2020 Term – at Alexandria, Virginia

THE GRAND JURY CHARGES THAT:

At all times material to this Indictment, unless otherwise stated:

### Introductory Allegations

1.  Defendant DANIEL BOICE ("BOICE") was the co-founder and chief executive officer ("CEO") of Trustify, Inc. ("Trustify"), which was incorporated in or around 2015 in Delaware. Trustify's original principal place of business was in Washington, D.C., and it moved its offices to Arlington, Virginia, within the Eastern District of Virginia, in or around 2016. BOICE also resided in Alexandria, Virginia beginning in or around November 2015.

2.  Trustify's primary business purpose was to provide a service that connected individual and corporate clients with private investigators. BOICE raised money by selling shares of Trustify stock to investors. Trustify filed documents with the Securities and Exchange

1

Commission ("SEC") which represented that Trustify had issued shares of its stock to investors via private placements under Rule 506(b) of Regulation D (17 C.F.R. § 230.506(b)). Trustify's stock was privately held and not publicly traded on a securities exchange.

3. BOICE controlled the e-mail accounts Danny@trustify.co and Danny.Boice@gmail.com, among others, as part of the conduct charged below.

### Scheme and Artifice to Defraud

4. From at least in or around February 2015 through at least in or around February 2019, defendant DANIEL BOICE engaged in a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises.

5. It was a purpose and object of the scheme for BOICE to obtain funds from investors by knowingly making materially false representations and promises regarding Trustify to investors and potential investors in order to induce them to invest, and to keep investors from requesting the return of their funds once they invested. BOICE misappropriated substantial portions of the investments for his personal expenses.

### Manner and Means of the Scheme

The manner and means by which BOICE executed the scheme, included, but were not limited to, the following:

6. BOICE would represent to investors and potential investors that Trustify provided a technology platform that connected individuals and businesses with private investigators. As part of his solicitation to investors and potential investors, BOICE would materially misrepresent the growth and size of Trustify's business, other aspects of Trustify's performance, and the use of investor funds.

2

7. BOICE would provide investors and potential investors with detailed Trustify financial statements that materially and falsely inflated Trustify's financial performance, including its monthly and annual revenues.

8. In quarterly investor update e-mails, and in additional e-mails and on phone calls and in-person meetings with investors and potential investors, BOICE would make additional material misstatements regarding Trustify's performance, such as falsely inflating Trustify's revenue growth.

9. BOICE would make false statements to investors and potential investors about the number of private investigators who worked with Trustify and the number of Trustify employees in order to falsely support the inflated size of Trustify's business.

10. BOICE would cause Trustify to make filings with the SEC that would falsely state that none of the gross proceeds of certain of its share offerings went to payments of its executive officers, including BOICE, when, in truth and in fact, as BOICE then well knew, he and other executive officers had taken substantial sums of the proceeds of its share offerings as personal compensation.

11. BOICE would make materially false statements to investors and potential investors about the amount of money that he received from Trustify, and would fraudulently conceal the large amounts of money that BOICE received from Trustify, in order to create the materially false appearance that his compensation was based primarily on his ownership interest in Trustify, which would have aligned his personal financial interest with the company's growth.

12. Despite representing to investors that their funds would go towards operating and growing Trustify's business, BOICE would divert money invested by Trustify shareholders to his own personal benefit and to fund his lavish lifestyle.

13. BOICE would make the above materially false statements to investors and potential investors for the purposes of inducing individuals and entities to invest millions of dollars in Trustify, and to lull them into a false sense of security to keep them from requesting the return of their funds once they had invested.

### Additional Conduct in Furtherance of the Scheme

BOICE's conduct in furtherance of the scheme, included, but was not limited to, the following:

### BOICE's Diversion of Investor Money

14. BOICE represented to investors that their investments would go towards operating and growing Trustify's business. Despite this, BOICE diverted millions of dollars of investor funds to his own personal benefit. For example, from in or around April 2015 through in or around December 2015, BOICE caused the transfer of over $500,000 from Trustify to a bank account in the name of GoLean DC, LLC, an entity controlled by BOICE. During the scheme, BOICE paid himself several million dollars in transfers from Trustify to bank accounts under his control and in personal charges on credit cards paid with Trustify funds.

### Company A

15. In or around April 2016, Individual 1 founded Company A, a venture capital firm. While working at a previous firm, Individual 1 received an e-mail from BOICE on or about January 19, 2016, in which BOICE made materially false representations about Trustify's 2015 revenues. On or about April 2, 2016, BOICE sent Individual 1 an e-mail that contained material misrepresentations about Trustify's business performance, including its 2015 and 2016 year-to-date (YTD) revenues. After receiving these and other material misrepresentations from BOICE, Individual 1 caused Company A to invest approximately $100,000 in Trustify on or about April

14, 2016, and approximately $200,000 on or about June 21, 2016. Following these investments, BOICE continued to provide Individual 1 and Company A with materially false information regarding Trustify's performance.

### Company B

16. Individual 2 was a partner at Company B, an investment firm. In 2016, BOICE participated in several in-person meetings with Individual 2, including at Trustify's offices in Arlington, Virginia. To induce Company B's investment, BOICE made material misrepresentations to Individual 2 about Trustify's performance. For example, in or around October 2016, BOICE represented to Individual 2 that Trustify was earning approximately $500,000 per month in revenue. As BOICE then well knew, however, in truth and in fact Trustify was earning far less in monthly revenue. After receiving these and other material misrepresentations from BOICE, Company B invested approximately $1.4 million in Trustify between in or around November 2016 and May 2018.

### Company C

17. Company C was an investment firm based in New York, New York. Individual 3 worked for Company C. Individual 3 communicated with BOICE regarding a potential Company C investment in Trustify. As part of his scheme, BOICE made a number of materially false statements of fact to Individual 3 regarding Trustify in order to induce Company C to invest.

18. For example, on or about March 1, 2017, BOICE provided Individual 3 with detailed Trustify financial statements. These statements contained material misrepresentations that fraudulently inflated Trustify's performance.

19. After receiving the false statements that BOICE made regarding Trustify's

performance, Company C invested approximately $4.75 million in Trustify on or about May 22, 2017.

20. As Company C considered whether to make an additional investment in Trustify on or about May 30, 2018, BOICE provided Individual 3 with a written presentation that again contained materially false representations regarding Trustify's financial performance, including false representations regarding Trustify's monthly revenue growth.

21. Then on or about June 14, 2018, BOICE sent a fraudulent e-mail to Individual 3 that appeared to come from Individual 4. Individual 4 was the Managing Partner of Company D, an investment bank. The subject line was, "Trustify Series B Close Confirmation," and it stated, in part, "[BOICE] asked that I send this to confirm today's wire of $7.5M. The wire is approved internally and will be going out today." This e-mail falsely assured Company C that Company D would be investing $7.5 million in Trustify and leading Trustify's Series B fundraising round. A fundraising round raises additional money from investors for the company. A "Series B" fundraising round typically takes place after certain earlier investment rounds, for example, a "Series A" fundraising round.

22. As BOICE then well knew, this information was false. Company D was not investing, and BOICE, not Individual 4, sent this e-mail from an account that was fraudulently created to look like Individual 4's real e-mail account. On or about June 14, 2018, Company C invested an additional approximately $2 million in Trustify.

Company E

23. Individual 5 was the CEO of Company E, an investment firm. On or about December 7, 2018 and January 15, 2019, BOICE contacted Individual 5 about Company E investing in Trustify. On or about January 30, 2019, Individual 5 re-contacted BOICE and

expressed interest in Company E investing in Trustify. On or about January 31, 2019, BOICE provided Individual 5 with documents containing materially false representations about Trustify. Then on a phone call between BOICE and Individual 5 later on or about January 31, 2019, and on additional phone calls on or about February 1, 2019 and February 8, 2019, BOICE confirmed certain of these materially false representations, and provided additional materially false information to Individual 5. Such falsehoods included, but were not limited to, the following:

  a. BOICE provided Individual 5 with a document on January 31, 2019 that detailed Trustify's revenues for the first ten months of 2018, and listed Trustify's estimated revenues for November 2018 and December 2018. That document represented that Trustify projected earning over $16 million in total revenue for 2018. Then, on the call with Individual 5 later that day, Boice confirmed that Trustify in fact had received over $16 million in revenue in 2018. As Boice knew, these figures were false. Trustify's 2018 revenues were significantly less.

  b. BOICE provided to Individual 5 on January 31, 2019 a document that stated that BOICE's compensation from Trustify was $75,000 per year. The document also noted that BOICE's "market" compensation was significantly higher, implying that BOICE was taking a reduced salary to work at Trustify. On the February 1, 2019 call, BOICE stated to Individual 5 that he was taking the reduced salary, in part, because, "it's about the exit ... we're not doing this to make ... some salary, it's more ... we're going big." BOICE confirmed on the February 1, 2019 call that his historical compensation at Trustify had been $75,000 per year. In truth and in fact, as BOICE then well knew, he received significantly more compensation from Trustify than what he told Individual 5. Such compensation

7

    included bank transfers from Trustify to accounts controlled by BOICE, and Trustify's payment of BOICE's personal expenses incurred on BOICE's credit card, among other forms of compensation.

  c. BOICE made misrepresentations to Individual 5 about Trustify's need for additional office space and the amount of cash that Trustify had on hand in its corporate bank account. BOICE told Individual 5 that Trustify had approximately $18 million in its corporate bank account. In truth and in fact, as BOICE then well knew, at that time Trustify was in the process of being evicted from its office space and the cash balance in its corporate bank account was less than $10,000.

<u>Additional Investors</u>

24. As part of his scheme, BOICE made materially false statements regarding Trustify's performance to induce a number of other Trustify investors to invest, and to prevent them from requesting the return of their investments. For example, on or about August 28, 2018, Company D signed an engagement letter with Trustify to help Trustify raise funds. BOICE provided Individual 4 with materially false Trustify financial information knowing that Company D would share it with potential investors. Company D then contacted potential investors about Trustify, unwittingly sharing the materially false Trustify financial information that BOICE had provided.

25. Additionally, BOICE made materially false statements in Trustify's quarterly updates, financial statements, investor presentations, and other e-mail communications that BOICE sent to investors. As one example, BOICE sent a Trustify 2018 Third Quarter investor update e-mail on or about October 14, 2018, in which he falsely told investors that Trustify had signed an agreement with Client A "as a subcontractor helping churn through the 700,000

candidate security clearance screen backlog for the Federal Government (OPM)." BOICE also made additional materially false statements to investors on phone calls and during in-person meetings. Over the time period of the charged scheme, over 90 individuals and entities invested approximately $18.5 million in Trustify.

## Counts 1-5
## Wire Fraud (18 U.S.C. § 1343 and 2)

26. The allegations set forth in Paragraphs 1 through 25 of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

27. On or about the dates below, in the Eastern District of Virginia, and elsewhere, defendant, DANIEL BOICE, having knowingly devised and intending to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, transmitted and caused to be transmitted, by means of wire communications in interstate and foreign commerce writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, as set forth below, each such wire transmission being a separate count:

| Count | Approximate Date | Description of Interstate Wire |
|---|---|---|
| 1 | 3/1/2017 | Email communication from BOICE sent from the Eastern District of Virginia to a location outside the Eastern District of Virginia to Individual 3 attaching purported Trustify financial statements. |
| 2 | 5/30/2018 | Email communication from BOICE sent from the Eastern District of Virginia to a location outside the Eastern District of Virginia to Individual 3 attaching a Trustify investor presentation. |
| 3 | 10/14/2018 | E-mail communication from BOICE sent from the Eastern District of Virginia to locations outside the Eastern District of Virginia providing Trustify's Q3 2018 investor update. |

| | | |
|---|---|---|
| 4 | 1/31/2019 | Telephone communication between BOICE in the Eastern District of Virginia and Individual 5 outside the Eastern District of Virginia, regarding a potential investment in Trustify by Company E. |
| 5 | 2/1/2019 | Telephone communication between BOICE in the Eastern District of Virginia and Individual 5 outside the Eastern District of Virginia, regarding a potential investment in Trustify by Company E. |

(All in violation of Title 18, United States Code, Sections 1343 and 2).

## Count 6
**Securities Fraud (15 U.S.C. §§ 78j(b); 78ff; 17 C.F.R. § 240.10b-5)**

THE GRAND JURY FURTHER CHARGES THAT:

28. The allegations set forth in Paragraphs 1 through 25 of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

29. From in or about February 2015 through at least in or about February 2019, in the Eastern District of Virginia and elsewhere, the defendant, DANIEL BOICE, did willfully and knowingly, directly and indirectly, by use of the means and instrumentalities of interstate commerce, in connection with the purchase and sale of securities, use and employ manipulative and deceptive devices and contrivances, in violation of Title 15, United States Code, Sections 78j(b) and 78ff, and Title 17, Code of Federal Regulations, Section 240.10b-5 by knowingly: (a) employing devices, schemes, and artifices to defraud; (b) making untrue statements of material facts and omitting to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices, and courses of business which operated and would operate as a fraud and deceit upon any person, to wit, BOICE made materially false representations to investors and potential investors in order to induce them to purchase Trustify stock in its Series B fundraising round.

(In violation of Title 15, United States Code, Sections 78j(b) and 78ff; and Title 17, Code of Federal Regulations Section 240.10b-5).

## Count 7
## Unlawful Monetary Transaction (18 U.S.C. § 1957)

THE GRAND JURY FURTHER CHARGES THAT:

30. The allegations set forth in Paragraphs 1 through 29, and Counts 1 through 6, inclusive, of this Indictment are re-alleged and incorporated by reference as if set forth herein.

31. On or about November 5, 2015, in the Eastern District of Virginia and elsewhere, the defendant, DANIEL BOICE, knowingly engaged in, and attempted to engage in, a monetary transaction by, through, and to a financial institution in criminally derived property of a value greater than $10,000, in and affecting interstate or foreign commerce, that is, causing the transfer by wire of approximately $291,190 from a bank account in the name of GoLean DC, LLC, an entity controlled by BOICE, to a bank account of Title Company A located in the Eastern District of Virginia as partial payment for the purchase of a home in Alexandria, Virginia, such property having been derived from specified unlawful activity, that is the proceeds of the wire fraud and securities fraud schemes alleged in Counts 1 through 6 of this Indictment.

(In violation of Title 18, United States Code, Sections 1957 and 2).

### Count 8
### Unlawful Monetary Transaction (18 U.S.C. § 1957)

THE GRAND JURY FURTHER CHARGES THAT:

32. The allegations set forth in Paragraphs 1 through 29, and Counts 1 through 6, inclusive, of this Indictment are re-alleged and incorporated by reference as if set forth herein.

33. On or about November 30, 2016, in the Eastern District of Virginia and elsewhere, the defendant, DANIEL BOICE, knowingly engaged in, and attempted to engage in, a monetary transaction by, through, and to a financial institution in criminally derived property of a value greater than $10,000, in and affecting interstate or foreign commerce, that is, causing the transfer by wire of approximately $83,270 from Trustify's corporate bank account to American Express, in part to pay for charges to Company F for private jet travel and related ground transportation between Dulles, Virginia and Barre, Vermont, such property having been derived from specified unlawful activity, that is the proceeds of the wire fraud and securities fraud schemes alleged in Counts 1 through 6 of this Indictment.

(In violation of Title 18, United States Code, Sections 1957 and 2).

## Forfeiture Notice

THE GRAND JURY FURTHER FINDS PROBABLE CAUSE FOR FORFEITURE AS DESCRIBED BELOW:

Pursuant to Federal Rule of Criminal Procedure 32.2(a), defendant DANIEL BOICE is hereby notified that:

1. If convicted of the wire fraud offenses alleged in Counts One through Five, or the securities fraud offense alleged in Count Six, he shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), the following property:

    (a) A sum of money not less than $3,700,000 in U.S. currency, representing the amount of proceeds obtained as a result of the violations of Title 18, United States Code, Section 1343, Title 15, United States Code, Sections 78j(b) and 78ff, and Title 17, Code of Federal Regulations Section 240.10b-5, as described in Counts One through Six;

2. If convicted of the money laundering offenses alleged in Counts Seven and Eight, he shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(1), any property, real or personal, involved in the offense, including but not limited to the following property:

    (a) A sum of money not less than $3,700,000 in U.S. currency, representing the amount of money involved in the violations of Title 18, United States Code, Section 1957.

3. Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), defendant DANIEL BOICE shall forfeit substitute property, up to the value of the amount described in subparagraphs 1(a) and 2(a), if, by any act or omission of defendant DANIEL BOICE, the property described in paragraphs 1(a) and 2(a), or any portion thereof, cannot be located upon the exercise of due diligence; has been transferred, sold to, or deposited with a third party; has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been comingled with other property which cannot be divided without difficulty.

(All pursuant to Title 18, United States Code, Sections 981(a)(1)(C), 982(a)(1) and Title 28, United States Code Section 2461(c).)

A True Bill

Pursuant to the E-Government Act,, The original of this page has been filed under seal in the Clerk's Office

_____        _____
Date                              Foreperson


G. Zachary Terwilliger            Robert Zink, Chief
United States Attorney            Criminal Division, Fraud Section
                                  U.S. Department of Justice

By: _/s/ Russell L. Carlberg_     By: _/s/ Blake C. Goebel_
Russell L. Carlberg               Blake C. Goebel
Special Assistant United States Attorney (LT)    Trial Attorney