FILED
IN OPEN COURT

DEC -3 2020

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>DANIEL BOICE,<br><br>Defendant. | Case No. 1:20-CR-167-TSE |

## STATEMENT OF FACTS

The United States and the defendant, DANIEL BOICE (hereinafter, "BOICE" or "the defendant"), agree that at trial, the United States would have proven the following facts beyond a reasonable doubt with admissible and credible evidence:

1. BOICE was the co-founder and CEO of Trustify, Inc. ("Trustify"), which was incorporated in 2015 in Delaware. Trustify's original principal place of business was in Washington, D.C., and it moved its offices to Arlington, Virginia in 2016. BOICE also resided in Alexandria, Virginia beginning in November 2015.

2. Trustify's primary business purpose was to provide a service that connected individual and corporate clients with private investigators. BOICE raised money by selling shares of Trustify stock to investors. Trustify filed documents with the Securities and Exchange Commission ("SEC") which represented that Trustify had issued shares of its stock to investors via private placements under Rule 506(b) of Regulation D (17 C.F.R. § 230.506(b)). Trustify's stock was privately held and not publicly traded on a securities exchange.

3. From at least February 2015 through at least February 2019, in the Eastern District of Virginia and elsewhere, the defendant knowingly engaged in a scheme and artifice to defraud, and to obtain money and property by means of making materially false and fraudulent pretenses,

representations, and promises to investors to cause them to part with money or property, by the use of interstate wires in violation of 18 U.S.C. § 1343 (wire fraud).

4.  Likewise, during the same period of time, in the Eastern District of Virginia and elsewhere, the defendant did willfully and knowingly, directly and indirectly, by use of the means and instrumentalities of interstate commerce, in connection with the purchase and sale of securities, use and employ manipulative and deceptive devices and contrivances, by (a) employing devices, schemes, and artifices to defraud; (b) making untrue statements of material facts and omitting to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices, and courses of business which operated and would operate as a fraud and deceit upon any person in violation of 15 U.S.C §§ 78j(b) and 78ff; and 17 C.F.R. § 240.10b-5 (securities fraud).

5.  BOICE represented to investors and potential investors that Trustify provided a technology platform that connected individuals and businesses with private investigators. As part of his solicitation to investors and potential investors, BOICE materially misrepresented the growth and size of Trustify's business, other aspects of Trustify's performance, and the use of investor funds.

6.  BOICE provided investors and potential investors with detailed Trustify financial statements that materially and falsely inflated Trustify's financial performance, including its monthly and annual revenues.

7.  In quarterly investor update e-mails, and in additional e-mails and on phone calls and in-person meetings with investors and potential investors, BOICE made additional material misstatements regarding Trustify's performance, such as falsely inflating Trustify's revenue growth.

8. BOICE made false statements to investors and potential investors about the number of private investigators who worked with Trustify and the number of Trustify employees in order to falsely support the inflated size of Trustify's business.

9. BOICE made materially false statements to investors and potential investors about the amount of money that he received from Trustify, and fraudulently concealed the large amounts of money that BOICE received from Trustify, in order to create the materially false appearance that his compensation was based primarily on his ownership interest in Trustify, which would have aligned his financial interest with the company's growth.

10. Despite representing to investors that their funds would go towards operating and growing Trustify's business, BOICE diverted money invested by Trustify shareholders to his own personal benefit and to fund his lifestyle, which included purchasing an expensive home in Alexandria, Virginia, travel by private jet, and furnishing a seaside vacation home.

11. BOICE would make the above materially false statements to investors and potential investors for the purposes of inducing individuals and entities to invest millions of dollars in Trustify, and to keep them from requesting the return of their funds once they had invested.

12. BOICE represented to investors that their investments would go towards operating and growing Trustify's business. Despite this, BOICE diverted millions of dollars of investor funds to his own personal benefit. For example, from March 2015 through December 2015, BOICE caused the transfer of over $500,000 from Trustify to a bank account in the name of GoLean DC, LLC, an entity controlled by BOICE. Over the time period of the charged scheme, BOICE paid himself several million dollars in transfers from Trustify to bank accounts under his control and in personal charges on credit cards paid with Trustify funds.

13. Company C[1] was an investment firm based in New York, New York. Individual 3 worked for Company C. Individual 3 communicated with BOICE regarding a potential Company C investment in Trustify. As part of his scheme, BOICE made a number of materially false statements of fact to Individual 3 regarding Trustify in order to induce Company C to invest.

14. For example, on March 1, 2017, BOICE sent an email from Arlington, Virginia in the Eastern District of Virginia by interstate wire communication to Individual 3, located outside of the Commonwealth of Virginia, attaching detailed Trustify financial statements. These statements contained material misrepresentations that fraudulently inflated Trustify's performance, including falsely overstating certain of Trustify's 2016 monthly revenues by more than 300 percent.

15. After receiving the false statements that BOICE made regarding Trustify's performance, Company C invested approximately $4.75 million in Trustify on May 22, 2017.

16. As Company C considered whether to make an additional investment in Trustify's Series B fundraising round,[2] on May 30, 2018, BOICE provided Individual 3 with a written presentation that again contained materially false representations regarding Trustify's financial performance, including falsely overstating Trustify's 2017 monthly revenues by more than 300 percent.

17. Then on June 14, 2018, BOICE sent a fraudulent e-mail to Individual 3 that falsely appeared to come from Individual 4. Individual 4 was the Managing Partner of Company D, an investment bank. The subject line was, "Trustify Series B Close Confirmation," and it stated, in

---

[1] References to anonymized companies and individuals in the Statement of Facts correspond with the references to anonymized companies and individuals in the Indictment (Dkt No. 1).

[2] A fundraising round raises additional money from investors for the company. Trustify's "Series B" fundraising round took place after certain earlier investment rounds.

4

part, "[BOICE] asked that I send this to confirm today's wire of $7.5M. The wire is approved internally and will be going out today." This e-mail falsely assured Company C that Company D would be investing $7.5 million in Trustify and leading Trustify's Series B fundraising round. As BOICE then well knew, this information was false. Company D was not investing, and BOICE, not Individual 4, sent this e-mail from an account that BOICE fraudulently created to falsely appear to be Individual 4's real e-mail account.

18. Later that same day, Company C invested an additional approximately $2 million in Trustify.

19. Additionally, BOICE made materially false statements in Trustify's quarterly updates, financial statements, investor presentations, and other e-mail communications that BOICE sent to investors. As one example, BOICE sent a Trustify 2018 Third Quarter investor update e-mail on or about October 14, 2018 to Trustify investors, in which he falsely told them that Trustify had signed an agreement with Client A "as a subcontractor helping churn through the 700,000 candidate security clearance screen backlog for the Federal Government (OPM)." In reality, Trustify had not entered into any agreement with Client A. BOICE also made additional materially false statements to investors on phone calls and during in-person meetings.

20. Over the time period of the charged scheme, BOICE induced over 90 individuals and entities to invest approximately $18.5 million in Trustify, which was lost as a result of the fraud as well as the failure of the business. Defendant BOICE personally derived at least $3,700,000 in proceeds of the fraud.

21. This statement of facts includes those facts necessary to support the plea agreement between the defendant and the United States. It does not include each and every fact known to the

defendant or to the United States, and it is not intended to be a full enumeration of all of the facts surrounding the defendant's case.

22. The actions of the defendant, as recounted above, were in all respects knowing and deliberate, and were not committed by mistake, accident, or other innocent reason.

Respectfully submitted,

G. Zachary Terwilliger
United States Attorney

Date: ~~November 16, 2020~~ Dec. 3, 2020

By: _____
Russell L. Carlberg
~~Special~~ Assistant United States Attorney ~~(LT)~~

Daniel S. Kahn, Acting Chief
Criminal Division, Fraud Section
U.S. Department of Justice

By: _____
Blake Goebel
Trial Attorney

After consulting with my attorney and pursuant to the plea agreement entered into this day between the defendant, DANIEL BOICE, and the United States, I hereby stipulate that the above Statement of Facts is true and accurate, and that had the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt.

_____
DANIEL BOICE

I am Todd M. Richman, defendant's attorney. I have carefully reviewed the above Statement of Facts with him. To my knowledge, his decision to stipulate to these facts is an informed and voluntary one.

_____
Todd Richman, Esq.
Attorney for DANIEL BOICE

7