IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Case No. 1:20-cr-167-MSN |
| ) | |
| DANIEL BOICE, ) | |
| ) | |
| Defendant. ) | |

### UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE

**I.     OVERVIEW OF CASE AND SUMMARY OF ARGUMENT**

The defendant, Daniel Boice (aka "Danny Boice"), was convicted of running a sophisticated investment fraud scheme that bilked "at least 254 investors" out of "at least $18,131,742.21." Dkt. No. 30 (PSR) at ¶ 63.[1] Boice's conduct was egregious. He effectively looted his startup company, Trustify, Inc., to fund a lavish lifestyle that included private jet travel, chauffeurs, a household staff, a beach home, compulsive shopping, and expensive trips to the Inn at Little Washington where he treated himself and his then-spouse (the President of Trustify) to the chef's table, couple's massages, overnight stays, and so forth, all on company money.

After the scheme was exposed, Boice attacked the victims, claiming he was a type of Robin Hood character fighting economic injustice by ripping off the rich.[2] Boice's sense of economic justice extended only to himself and his immediate family, as he was separately found liable in federal court for short-changing his own employees of wages and back pay and engaging in

---

[1] The final restitution/loss figure was $18,527,086.25.

[2] While venture capital firms suffered the largest single losses, many small individual investors also suffered significant losses.

retaliation after he fired them over email on Thanksgiving Day.[3] The government's sentencing position, Dkt. No. 31 (filed with 11 exhibits), incorporated herein by reference, details much of Boice's outrageous conduct at length. So does the excellent Pre-Sentence Investigation Report ("PSR"). Dkt. No. 30.

On March 26, 2021, Judge T.S. Ellis, III, rejected Boice's entreaties for a variant sentence, commenting that this case was much more serious than the typical white-collar case. Judge Ellis sentenced the defendant to 97 months in prison.

At the time of sentencing, which was well into the COVID-19 pandemic, the then-41-year-old defendant's health conditions were well known to the Court. At that time, the defendant's diagnosis of idiopathic thrombocytopenic purpura (ITP) was detailed in the PSR as follows:

> As previously noted, the defendant was diagnosed with idiopathic thrombocytopenic purpura (ITP), when he was 13 years old. He was initially treated with platelet infusions for several years, and ultimately had to have his spleen removed in the late 1990s. When he has recurrences, he is treated with intravenous immunoglobulin (IVIG) and a regimen of prednisone, which he noted has significantly improved his condition. He advised he has only had recurrences a few times in the last 5 to 10 years. The defendant advised he was also born with only one kidney, though it has not caused him any problems.

(PSR para. 108). This health condition—something Boice has successfully lived with since age 13—did not stop the defendant from perpetrating his scheme, traveling by private jet, enjoying couples' massages, and so forth. Nor has it led to any adverse health outcomes during his time in the Bureau of Prisons. He has even engaged in prison fights in the BOP and come out of them without adverse effect. There is nothing new in this health condition, and the Court factored that into his sentence already.

---

[3] *See* Dkt. No. 30 (PSR) at ¶ 141; *Scott et al. v. Trustify, Inc., et al.*, No. 1:19-cv-0032-LO-MSN.

As will be further discussed below, this 45-year-old defendant's compassionate release motion should be denied because he has failed to establish an extraordinary and compelling reason based on COVID-19 and his chronic, but manageable, health conditions. Moreover, as will be demonstrated, the defendant's motion is inaccurate, possibly by design, on a number of key points. For instance, the defendant writes that "the BOP will not test, treat, report or vaccinate chronically ill inmates." Def. Mot. at 2. Defendant repeats that FCI Butner is "refusing to supply Covid boosters" and, adding underlined emphasis to his text, that, as a result, he is at heightened risk due to lack of booster shots. *Id*. The defendant's submission of incomplete medical records further creates the false impression that Boice has not received vaccines or basic health care in BOP custody.

Not so. In fact, as Boice's full medical records (filed under seal by the government) show that he has been vaccinated multiple times for COVID-19, and also against other diseases.[4] He has been tested for COVID-19, and even was positive for it, was treated, and fully recovered. He is routinely dispensed prescription medication. He frequently receives health care services. Defendant writes that his BMI is over 33. Def. Mot. at 4. Yet, his medical records show his BMI was 26 during a June 24, 2024 visit to the health clinic.

---

[4] The government has sought leave to file the defendant's underlying health and prison records under seal. That does not prevent the government from referring to them or quoting relevant parts in this response, since the defendant has put his health conditions at issue and has publicly filed his own arguments about his health. *See e.g. United States v. Lopez-Perez*, 2021 WL 809396, at *1 (E.D. Cal. Mar. 3, 2021) (the court seals the medical records but not the defendant's motion: "While there are sufficient and compelling reasons to shield the underlying records that support a diagnosis or treatment of a medical condition from public inspection, the Court cannot reach the same conclusion with respect to the mere identification of the medical conditions that form the basis of a § 3852(c)(1) motion. The public has a significant interest not only in the judicial system in general, but also in the grounds that are being used to justify the early release of convicted federal prisoners from imprisonment.") *See also United States v. Read-Forbes*, 2020 WL 4673216, at *1 (D. Kan. Aug. 12, 2020) (denying motion to seal); *United States v. Jones*, 2020 WL 6205783, at *1 (D. Mass. Oct. 22, 2020) (same).

3

Finally, Boice's supposed request for compassionate release to the Warden appears never to have been submitted to the Warden. The BOP has searched its files and there no record of receipt of the documents he submitted at pages 79-81 of Docket No. 42-2 ("Exhibit 10"). There is no record of the Warden reviewing his request or a written decision denying it. Moreover, a comparison of the emails he submitted to this Court and the full record the BOP produced indicates the defendant did not include portions of communications not favorable to his case. In other words, it appears the defendant has tried to paint a picture of himself as an unvaccinated inmate, not receiving medical care, and totally on his own in a filthy environment. That is a false picture. Simply put, the defendant's inaccurate motion should be denied as lacking merit.

And whatever the defendant's other boilerplate complaints about the BOP (water quality, mold) may be, they do not amount to an extraordinary and compelling need to grant him compassionate release. In any event, the statutory sentencing factors under 18 U.S.C. § 3553(a) do not support a sentence reduction for Boice.

## II.    BOICE HAS FAILED TO ESTABLISH AN EXTRAORDINARY AND COMPELLING REASON TO RELEASE HIM.

The "default position stated in 18 U.S.C. § 3582(c) is that a sentencing court 'may not modify a term of imprisonment once it has been imposed.'" *United States v. High*, 997 F.3d 181, 185 (4th Cir. 2021) (quoting § 3582(c)).  Section 3582(c)(1)(A) sets forth a limited exception to that general rule, authorizing the Court to reduce a sentence, "after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction" and "that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."  "Thus, under the statute, a defendant becomes *eligible* for relief only if the court finds that a reduction is both (1) warranted by 'extraordinary and compelling reasons' and (2) 'consistent with applicable policy statements

4

issued by the Sentencing Commission[.]'" *High*, 997 F.3d at 186 (quoting § 3582(c)(1)(A)). If the Court finds that the defendant "has demonstrated extraordinary and compelling reasons," then "it must 'consider[]' the § 3553(a) sentencing factors 'to the extent that they are applicable' in deciding whether to exercise its discretion to reduce the defendant's term of imprisonment." *Id.* (quoting § 3582(c)(1)(A)).

Section 3582(c)(1)(A) sets "an exceptionally high standard for relief." *United States v. McCoy*, 981 F.3d 271, 288 (4th Cir. 2020); *see also United States v. Rodriguez-Pena*, 108 F.4th 12, 17 (1st Cir. 2024) (the "extraordinary and compelling" standard remains "inherently narrow" and "stringent") (citations omitted). "The defendant seeking compassionate release bears the burden of showing that extraordinary and compelling reasons warrant a sentence reduction." *United States v. Melvin*, No. 23-6011, 2023 WL 5974872, at *2 (4th Cir. Sept. 14, 2023) (per curiam); *see also, e.g.*, *United States v. Jennings*, No. 3:18-cr-34-REP, 2023 WL 5017971, at *2 (E.D. Va. Aug. 7, 2023). Because the defendant has not established extraordinary and compelling reasons under § 3582(c)(1)(A) and the § 3553(a) factors do not support a sentence reduction, the Court should deny his motion.

  A. **The defendant's COVID-19 claim does not satisfy § 1B1.13(b)(1).**

Under § 1B1.13(b)(1) of the amended policy statement for compassionate release motions, the medical circumstances of the defendant may be an extraordinary and compelling reason for a sentence reduction if:

> (D)   The defendant presents the following circumstances—
>
>  (i)   the defendant is housed at a correctional facility affected or at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority;
>  (ii)   due to personal health risk factors and custodial status, the defendant is at increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak of infectious disease or the ongoing public health emergency described in clause (i); and

5

    (iii) such risk cannot be adequately mitigated in a timely manner.

Boice fails to present extraordinary and compelling reasons to order his release.

  Boice's primary claim is that having ITP places him at an extraordinary risk of having a bad outcome from COVID-19. "In the context of the COVID-19 outbreak," a defendant must show "both a particularized susceptibility to the disease and a particularized risk of contracting the disease at his prison facility" to establish an extraordinary and compelling reason for compassionate release. *United States v. Reams*, 847 F.App'x 199, 199 (4th Cir. 2021) (per curiam) (quoting *United States v. Feiling*, 453 F.Supp.3d 832, 841 (E.D. Va. 2020)). The defendant's current motions fail on both counts. To attempt to overcome this burden, Boice simply paints a false picture of his facility, based on 2023 material not specific to his facility, that COVID is rampant. For the reasons below, the defendant's claim has failed.

  *First,* the defendant has not shown a "particularized risk of contracting the disease at his prison facility." Courts have required that a defendant's particularized risk "be supported by evidence of an actual outbreak in his facility, not simply the mere possibility of COVID-19 spreading to his camp." *United States v. Little*, No. 1:10-cr-135, 2020 WL 3442173, at *2 (E.D. Va. June 23, 2020); *see also Feiling*, 453 F. Supp. at 841 (rejecting a compassionate release motion by a defendant who alleged that he had multiple medical conditions because his "request relies on the mere possibility that COVID-19 will spread to his facility").

  As of October 28, 2024, of the 4,057 inmates at FCC Butner,[5] there were only 2 open COVID cases and 2,698 of the total prison population had been fully inoculated against the virus. *Inmate COVID-19 Data, Federal Bureau of Prisons,*

---

[5] FCC Butner is comprised of 4 different facilities located in Butner, N.C.: FCI Butner Medium II; FCI Butner Low (the defendant's facility); FCI Butner Medium I, and FMC Butner (the medical facility).

https://www.bop.gov/about/statistics/statistics_inmate_covid19.jsp#lastestCovidData (last accessed October 28, 2024). The few infections at the facility illustrate that the defendant is not at a heightened risk of contracting COVID-19. In percentage terms, 0.049298 % of the inmates are presently infected. And the fact that most inmates at the facility are vaccinated further minimizes his risk of contracting the disease. The defendant has therefore failed to establish that he has a particularized risk of contracting COVID-19 at FCC Butner overall, or FCI Butner Low, specifically.[6]

Moreover, nationally, COVID death rates have dramatically fallen since the pandemic, both in absolute terms and in percentage of infections. https://covid.cdc.gov/covid-data-tracker/#trends_weeklydeaths_select_00 (last accessed October 28, 2024). Overall restrictions have greatly eased since the pandemic and even people positive with COVID-19 need not isolate like they had to during the pandemic. https://www.cdc.gov/respiratory-viruses/prevention/precautions-when-sick.html.

*Second,* the defendant has not shown that he faces a "particularized susceptibility" to COVID-19 because he has been fully vaccinated against the virus and his medical needs are actively and adequately managed by BOP. Boice's medical records show not only that he is vaccinated against COVID-19, but that he has contracted COVID-19 and quickly recovered from it. That alone is enough to deny the defendant's claim. *See United States v. Kurzynowski*, 17 F.4th 756, 758 (7th Cir. 2021) (concluding that "the fact that [the defendant] is vaccinated precludes a finding that the COVID-19 pandemic presents extraordinary and compelling reasons for his release"). *See also Martinez v. United States*, No. 2:13-cr-122 (RAJ), 2021 WL 5139496, at *3

---

[6] FCI Butner Low has 995 total inmates. https://www.bop.gov/locations/institutions/buf/.

(E.D. Va. Nov. 3, 2021) (finding that the defendant failed to show a particularized susceptibility to COVID-19 because he had received both doses of the vaccine). Moreover, the defendant's relative youth also means that he is less likely than an older defendant to suffer a bad outcome if he were to contract COVID-19. The CDC has recognized that the "[r]isk for severe illness with COVID-19 increases with age, with older adults [being] at highest risk." *Older Adults*, CDC (Aug. 2, 2021), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html.

Additionally, the defendant's medical needs are adequately managed. A simple perusal through his medical records indicates he receives regular care; receives prescription drugs; visits the health clinic as needed; and is tested for and successful recovered from COVID-19. His claims on page three of motion are simply falsehoods. So is the implication he attempts to leave that his chronic ITP is akin to a terminal illness. It may be chronic, but it is not terminal. Chronic conditions that can be managed in prison are not a sufficient basis for compassionate release. *United States v. Ayon-Nunez*, 2020 WL 704785, at *3 (E.D. Cal. Feb. 12, 2020)

In short, far from showing that the defendant is particularly susceptible to COVID-19, his robust medication regime, lengthy clinical history, and routine accessing of health care services show that the Bureau of Prisons is capably managing and addressing his conditions. *See, e.g.*, *United States v. Smith*, No. 3:15-cr-101 (REP), 2021 WL 3641463, at *2 (E.D. Va. Aug. 17, 2021) (finding that defendant was not particularly susceptible to COVID-19 because he was fully vaccinated and his chronic medical conditions were adequately managed in prison through regular medical care, medication, and testing).

Because the defendant has failed to show both a particularized susceptibility to COVID-19 and a particularized risk of contracting the disease at his facility, he has not established an extraordinary and compelling reason for a sentence reduction under § 1B1.13(b)(1)(D).

8

Because "compassionate release is reserved for 'truly exceptional cases' where Defendants can meet a 'heightened standard' of entitlement to relief," *McCoy*, 981 F.3d at 287-88, and Boice does not meet this high standard, his claim should be denied.

Moreover, Boice has failed to identify a release plan that would put him at any lesser risk than he currently faces.

B.       **The defendant also fails to satisfy § 1B1.13(b)(5).**

In his motion, Boice further also attempts to avail himself of the catch-all provision of § 1B1.13(b)(5) of the amended policy statement for compassionate release, which reads:

> (5) OTHER REASONS – The defendant presents any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4).

Boice, however, presents nothing approaching a combination of conditions similar in gravity to his COVID-19 claims related to his ITP, let alone anything approaching extraordinary and compelling reasons for release under the guideline. Likewise, his claims about having an enlarged prostrate and high cholesterol make him no different than any other forty-something prisoner. With respect to his potpourri of routine health problems, and his fears of RSV or other unnamed respiratory diseases, Boice is in no different situation than the other 995 inmates at FCI Butner Low. *See e.g. United States v. Maher*, 2020 WL 390884 (D. Me. Jan. 22, 2020) (the defendant has a history of Crohn's disease, prostate cancer, and hepatitis C, as well as significant unexplained weight loss, bacterial pneumonia, and acute exacerbation of bronchiectasis; his condition is not sufficiently serious). In any event, Boice's complaints about mold and his "HARSH CONDITIONS OF CONFINEMENT" (Def. Br. at 3) should be framed as a *habeus corpus* petition under 28 U.S.C. § 2241 brought in the district of his confinement, not before this Court.

Finally, courts in this district repeatedly have held that "[r]ehabilitation of the defendant

9

alone shall not be considered an extraordinary and compelling reason" for compassionate release. *United States v. Hill*, No. 3:14cr114, 2020 WL 6049912, at *5 (E.D. Va. Oct. 13, 2020) (quoting 28 U.S.C. § 994(t)); *see Woolridge*, 2021 WL 415131, at *3. Indeed, "rehabilitation is the *only* circumstance that Congress has singled out as *not* being 'extraordinary and compelling.'" *United States v. Logan*, No. 97-CR-99(3) (PJS/RLE), 2021 WL 1221481, at *7 (D. Minn. Apr. 1, 2021). This limitation makes sense because defendants are expected to conduct themselves appropriately and try to better themselves while incarcerated. *See, e.g.*, *Logan*, 2021 WL 1221481, at *8 ("Prisoners are *supposed* to follow the rules, take classes, work at a job, and otherwise attempt to improve themselves. That a prisoner does so means that he has met baseline expectations, not that he has done something extraordinary."); *United States v. Martin*, No. 6:06-105-DCR, 2021 WL 134602, at *2 (E.D. Ky. Jan. 13, 2021) ("[G]ood behavior and education, which are expected of incarcerated individuals, do not constitute 'extraordinary and compelling circumstances' that warrant a sentence reduction."); *see also* Order at 6, *United States v. Ahmad*, No. 1:11-cr-554-TSE, ECF No. 75 (E.D. Va. Apr. 8, 2021) (finding that the defendant's coursework did not support compassionate release, reasoning that "[i]t is not uncommon for a defendant to take educational classes to pass the time in prison"). Besides, this defendant's overheated and factually inaccurate filing should call into question whether he has turned over a new leaf or is simply writing another chapter of fraud in his book of life.

### III. THE § 3553(a) FACTORS DO NOT SUPPORT A SENTENCE REDUCTION.

Finally, even if the Court determines that extraordinary and compelling reasons exist, it should deny the defendant's motion because the § 3553(a) factors do not support a sentence reduction in this case. *See, e.g.*, *High*, 997 F.3d at 186 (4th Cir. 2021); *United States v. Bond*, 56 F.4th 381, 385 (4th Cir. 2023). Under § 3582(c)(1)(A), a court may reduce a defendant's sentence

only after considering the factors set forth in 18 U.S.C. § 3553(a). The §3553(a) factors include the nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law and provide just punishment for the offense; deterrence; protecting the public; and avoidance of unwarranted sentencing disparities. These factors weigh strongly against the defendant.

### A. Nature and Circumstances of the Offense

Boice carried out this complex scheme over a period of many years. Almost immediately after founding Trustify, Boice began embezzling company funds. In 2015, he quickly misdirected a half a million dollars to a different bank account, then used that money to purchase a lavish residence in Alexandria and to fund a beach house, and to pay for private school tuition. Boice did not hold back on abusing both company and personal credit cards, running up massive personal expenses each month —all paid for by Trustify. Those expenses included only the best tickets at professional sporting events, sessions at nail salons, couples' massages, tours of wineries, and spending sprees at places like Saks Fifth Avenue, David Yurman (luxury jewelry), and Amazon. Again, these expenses were covered by investor funds and Trustify's revenues.

At the same time that Boice was using company funds to fly his family on private jets and on foreign travel, he was telling investors that his financial interests were aligned with those of Trustify; that he was busy working hard to grow "the Uber of private detectives." A skilled con man who understands his marks, Boice confidently and smoothly speaks the language of tech, of investment rounds, and even faking a passion for the business and faking concern for others. But his true passion was living a lavish lifestyle and playing the role of successful CEO, not actually being one.

Boice understood the psychology of the venture capital world; how start-ups could be funded and positioned for growth; he understood technology, and the way investors value new tech start-ups. To investors, he highlighted his faith and family, claiming Trustify was a company run by women and minorities, and was dedicated to combating human trafficking, fighting domestic violence, and helping missing and exploited children, and so forth. GX-5 (slides 7-9). Such high-minded talk about the supposed social mission of Trustify obscured the dirty reality: extravagant personal spending that was all paid from Trustify funds.

Finally, Boice understood that venture capital firms expect a certain number of start-ups to fail, and Boice exploited this mindset. Whether Boice conceived of Trustify as a scam from the start, or very quickly went down the road of plundering it and mismanaging it to the point of no return, we cannot say. But we can say that Boice lied almost from the start. He embezzled almost from the start. He did so with great skill and flair, and he had many employees who trusted him, but who were burned badly in their reliance on him.

Boice lied often and skillfully, without any evident remorse. When he was challenged or asked for details, he either went silent, or he exploded in anger at employees who would challenge him. And in the end, he blamed the victims — publicly.

B.     **Seriousness of the Offense / Respect for the Law / General Deterrence**

This was a serious offense that has defrauded at least 254 investors of over $18 million. It was stunning in its scope and duration, compared to many of the more modest fraud cases we see. The defendant's use of interlocking and sophisticated documents, his abuse of his authority as CEO of Trustify and his utter betrayal of his fiduciary duties to his shareholders and employees, all helped delay detection of the crimes and made it harder for him to be brought to justice. Such crimes deserve greater punishment than the ordinary fraud case. *See United States v. Hefferman*,

43 F.3d 1144, 1149 (7th Cir. 1994) ("Considerations of (general) deterrence argue for punishing more heavily those offenses that either are lucrative or are difficult to detect and punish, since both attributes go to increase the expected benefits of a crime and hence the punishment required to deter it."). For these reasons, also, the significant custodial sentence that Judge Ellis originally imposed remains the correct sentence today. The original sentence was, and still is, necessary to promote general deterrence and respect for the law.

      C.      **History and Characteristics of the Defendant / Specific Deterrence**

For the better part of a decade, the defendant led a life of fraud and deceit. He willfully and repeatedly falsified financial statements; he falsified a key investor email; he grossly inflated the number of detectives he claimed to have in Trustify's network, and, at the same time, he plundered Trustify regularly and repeatedly, leaving vendors, employees, and investors high and dry. And he did so with no evident expression of remorse. At the end of the theft of millions of dollars spent on fancy homes, private jet travel, country clubs, meals, European travel, vanity projects, and countless other absurdities, what was left was: unpaid employees, and unpaid child support for his three biological children. *See* PSR ¶¶ 104-105.

Boice remains a capable and calculating criminal. That he could fool so many investors for so long is a testament to his skills as a con artist. That he could carry on for so long, and loot the company so freely, even while shouting down unpaid employees, accusing his largest victim of "fucking him over," and defaming them publicly in his blog, is a testament to his lack of empathy for others, and his sense of entitlement and that the rules do not apply to him. This is the kind of defendant who must remain incarcerated for substantial time.

## IV.  CONCLUSION

This fully vaccinated defendant has failed to establish either that he is particularly susceptible to a bad outcome from COVID-19, nor that his facility places him at an extraordinary risk. His medical records flatly contract his claims and explode the image he painted of himself as an untreated, unvaccinated prisoner left alone to suffer without medical care. That he would file such a misleading motion should underline for this Court just how much this defendant has not changed, and how his mindset is still defined by criminal thinking. For all of these reasons, the government respectfully requests that the defendant's motion be denied.

Respectfully submitted,

Jessica D. Aber
United States Attorney

_____
Russell L. Carlberg
Assistant United States Attorney
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, VA 22314
Office:  (703) 299-3868
Fax:     (703) 299-3980
Email:   Russell.L.Carlberg@usdoj.gov

## CERTIFICATE OF SERVICE

I certify that on October 29, 2024, I filed electronically the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to all counsel of record.

I further certify that not later than October 30, 2024, I caused a true and correct copy of the foregoing, and of the government's sealed filing (medical and prison records) to be sent by U.S. mail to:

Daniel K. Boice
Reg. No. 73715-018
Butner Low FCI
Federal Correctional Institution
P.O. BOX 999
Butner, NC  27509

By:  _____/s/_____
Russell L. Carlberg
Assistant United States Attorney
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, VA 22314
Office:   (703) 299-3868
Fax:      (703) 299-3980
Email:   Russell.L.Carlberg@usdoj.gov