IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

ALEXANDRIA DIVISION



UNITED STATES OF AMERICA

v.

DANIEL BOICE,

Defendant.

Case No. 1:20-cr-167-MSN

## DEFENDANT'S REPLY TO THE GOVERNMENT'S OPPOSITION TO MOTION FOR COMPASSIONATE RELEASE

### I. Introduction

Defendant Daniel Keith Boice respectfully submits this reply to address and refute the arguments raised in the government's opposition to his motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A). This reply highlights recent developments, corrects misrepresentations, and underscores the extraordinary and compelling circumstances justifying Defendant's immediate release or home confinement.

***Key Developments Supporting Compassionate Release:***

1. **Reclassification to Care Level 3:**

   The Bureau of Prisons (BOP) recently reclassified Defendant's medical care level from 2

to 3, affirming the severity of his health conditions and systemic neglect. This change directly contradicts the government's assertion of adequate care and underscores the urgent need for judicial intervention.

2. **Untreated and Worsening Health Conditions:**
   Defendant has suffered a sudden and unexplained 45-pound weight loss, a dangerously enlarging prostate, and worsening complications from Chronic Immune Thrombocytopenic Purpura (ITP), hypertension, and a single kidney. These conditions remain untreated, presenting a daily, life-threatening risk.

3. **Projected Home Confinement Release Date:**
   Based on the latest First Step Act time credit calculations, Defendant's home confinement release date has been updated to be within 12 months, in December 2025. Defendant requests a modest adjustment of 12 months, advancing this date to December 2024, to avoid the severe risks posed by systemic neglect and inadequate medical care at FCC Butner.

4. **Misaligned Custody and Security Placement:**
   Despite Judge Ellis's sentencing recommendation for minimum-security placement and Defendant's custody score of 6, the BOP has housed him at FCI Butner Low—a higher-security facility—exposing him to unnecessary risks and limiting access to reentry preparation.

5. **Staff Misconduct and Systemic Failures:**
   Misconduct by Officer D. Ford, including fabricated disciplinary charges, highlights systemic failures at FCC Butner. Though Ford was temporarily suspended after an

investigation, he continues to work near Defendant, perpetuating a dangerous and hostile environment.

6. **Low Risk to Public Safety:**

   Defendant's recidivism score is zero, and he has demonstrated extraordinary rehabilitation through vocational training, financial responsibility programs, and faith-based initiatives. These efforts further confirm his readiness for reintegration and the absence of any public safety threat.

Defendant's circumstances align with 18 U.S.C. § 3582(c)(1)(A) and the Court's consistent emphasis on fairness, proportionality, and individualized assessments. This reply builds upon these principles, demonstrating why compassionate release is the appropriate remedy.

## II. Recent Developments

### 1. Reclassification to Care Level 3

#### a. Summary

The BOP Central Office reclassified Defendant to Care Level 3 after a comprehensive review of his medical records, acknowledging the severity of his chronic and life-threatening conditions. This decision, delayed for over three years, reflects systemic failures in Defendant's care and directly refutes the government's assertion that Defendant's medical needs have been adequately addressed. Such neglect violates statutory obligations under 18 U.S.C. § 3553(a)(2)(D) and constitutes extraordinary and compelling circumstances for compassionate release.

**b. Legal Precedents Supporting Medical Reclassification as Extraordinary and Compelling**

Courts have recognized that systemic failures in medical care constitute extraordinary and compelling circumstances under § 3582(c)(1)(A):

- **United States v. Mangarella**, 57 F.4th 197, 200 (4th Cir. 2023): Highlighted the necessity of individualized medical assessments, particularly when institutional neglect exacerbates an inmate's vulnerabilities.

- **United States v. Beck**, 425 F. Supp. 3d 573, 577 (M.D.N.C. 2019): Found systemic delays in addressing health needs sufficient for compassionate release.

- **United States v. Colvin**, No. 3:19-cr-179, 2020 WL 1613943 (D. Conn. Apr. 2, 2020): Emphasized that institutional failures to address worsening medical conditions justified relief.

- **United States v. Davis**, 62 F.4th 212, 216 (4th Cir. 2024): Recognized the incompatibility of incarceration with exacerbated health vulnerabilities.

- **United States v. Daniels**, No. 2:17-cr-00196 (E.D. Va. Mar. 18, 2021): Highlighted systemic deficiencies at FCI Butner Low as extraordinary and compelling grounds for release.

**c. Details**

The BOP upgraded Defendant's care level after external review, highlighting prior errors and neglect. However, despite the reclassification:

1. Defendant's unexplained weight loss, prostate enlargement, and Chronic ITP remain untreated.

2. No specialist consultations or clinical interventions have been initiated, despite Care Level 3 requiring frequent clinical contacts.

3. Defendant remains confined at FCC Butner, which accounts for 25% of all BOP inmate deaths—a disproportionate statistic linked to systemic neglect (*DOJ OIG Report, 2024*).

The systemic neglect mirrors deficiencies identified in *Beck* and *Daniels*. Moreover, the lack of Care Level 3 minimum-security options restricts Defendant's placement options, further isolating him from appropriate medical care and family support.

**d. Request for Court Action**

As BOP staff will not provide any documentation despite several requests, Defendant respectfully requests that the Court order the BOP to produce:

1. Internal communications, records and reports related to Defendant's reclassification and current medical condition.

2. Records outlining Defendant's future treatment plan and evaluations.

This documentation will verify that:

- Defendant's medical condition and reclassification is as stated by both Defendant and Government.

- BOP Central Office reclassified Defendant to increased Care Level.

- Butner Medical has not changed their treatment or monitoring or testing of Defendant.

### e. Conclusion

Defendant's Care Level 3 reclassification underscores the life-threatening risks he faces. Judicial intervention is necessary to ensure access to life-saving care and a placement consistent with fairness and proportionality under 18 U.S.C. § 3553(a).

### *2. Projected Home Confinement Release Date*

#### a. Updated Release Date

Defendant's case manager has recently recalculated his home confinement release date to be December 2025, reflecting time earned under the First Step Act and Second Chance Act. Defendant's request for compassionate release seeks only a modest adjustment of 12 months, advancing this date to December 2024.

#### b. Minimal Reduction with Significant Impact

The modest 12-month adjustment would:

- Allow Defendant immediate access to specialized medical care critical for his survival.

- Alleviate the risk of life-threatening complications from systemic neglect at FCC Butner.

- Ensure Defendant's reintegration efforts are not undermined by continued incarceration under unsafe and medically inadequate conditions.

#### c. Supporting Case Law

Courts have recognized that proximity to release supports compassionate release:

- **United States v. Rodriguez**, 451 F. Supp. 3d 392, 407 (E.D. Pa. 2020): Proximity to release is a significant factor in granting relief.

- **United States v. Ebbers**, 432 F. Supp. 3d 421, 430 (S.D.N.Y. 2020): Diminished benefit of continued incarceration as release approaches supported granting compassionate release.

## 3. Untreated and Worsening Health Conditions

### a. Summary

Defendant's sudden 45-pound weight loss, prostate enlargement, and complications from Chronic ITP and hypertension remain untreated, reflecting systemic neglect. These untreated conditions present a daily, immediate threat to Defendant's life, constituting extraordinary and compelling circumstances under § 3582(c)(1)(A).

### b. Legal Precedents Supporting Medical Neglect as Extraordinary and Compelling

Courts have consistently granted compassionate release based on institutional neglect:

- **United States v. Beck**, 425 F. Supp. 3d 573, 577 (M.D.N.C. 2019): Recognized systemic delays in treating critical conditions as extraordinary circumstances.

- **United States v. Mangarella**, 57 F.4th 197, 200 (4th Cir. 2023): Highlighted failures to provide individualized care as justifying relief.

- **United States v. Daniels**, No. 2:17-cr-00196 (E.D. Va. Mar. 18, 2021): Cited systemic neglect at FCI Butner Low as grounds for compassionate release.

- **United States v. Clark**, 451 F. Supp. 3d 651, 655 (M.D. La. 2020): Found systemic delays in addressing health issues sufficient for relief.

### c. Details of Defendant's Untreated Conditions

1. **Unexplained Weight Loss:**

   Defendant's 45-pound weight loss remains uninvestigated, raising concerns of undiagnosed cancer or other life-threatening conditions.

2. **Enlarging Prostate:**

   Prostate growth has caused urinary complications, with no specialist evaluations conducted.

3. **Chronic ITP and Single Kidney:**

   Chronic ITP, coupled with a single kidney, exacerbates Defendant's vulnerability to internal bleeding and infections.

Despite the BOP's obligation to address Care Level 3 conditions, Defendant's needs remain unmet, reflecting failures documented in *Beck* and *Daniels*.

### d. Conclusion

Defendant's untreated health conditions constitute extraordinary circumstances for compassionate release. Systemic failures at FCC Butner and the heightened mortality risk necessitate judicial intervention to ensure humane treatment and compliance with 18 U.S.C. § 3553(a).

### 4. Misaligned Custody and Security Placement

### a. Summary

Defendant's housing at FCI Butner Low—a higher-security facility—contradicts Judge Ellis's sentencing recommendation and Defendant's custody classification score of 6. This misalignment has exposed Defendant to undue risks, deprived him of reentry preparation

opportunities, and compounded the systemic neglect of his medical conditions. The government's opposition attempts to mischaracterize an unprovoked attack on Defendant as evidence of violent tendencies, ignoring his medical vulnerabilities and the systemic failures that placed him in harm's way.

### b. Legal Precedents Supporting Proper Custody Placement

Courts have consistently held that misaligned custody placements creating unnecessary risks are extraordinary and compelling circumstances:

- **United States v. Bellamy**, No. 3:12-cr-19-FDW, 2021 WL 1381231, at *3 (W.D.N.C. Apr. 12, 2021): Found heightened risks from improper placements sufficient to justify compassionate release.

- **United States v. Davis**, 62 F.4th 212, 216 (4th Cir. 2024): Emphasized the systemic failures in ensuring inmate safety as grounds for release.

- **United States v. Beck**, 425 F. Supp. 3d 573, 580 (M.D.N.C. 2019): Highlighted the importance of aligning custody placements with inmates' security and medical needs.

- **United States v. Handy**, No. 3:10-cr-00124, 2021 WL 2480100, at *2 (D. Alaska June 17, 2021): Held that systemic mismanagement of inmate classifications and placements warranted judicial intervention.

### c. Details

1. **Judge Ellis's Sentencing Recommendation:**
   Judge Ellis explicitly recommended placement in a minimum-security facility, recognizing Defendant's low-risk classification and medical needs. Despite meeting all

criteria for minimum-security placement, the BOP has confined Defendant at FCI Butner Low, a higher-security institution.

2. **Exposure to Violence:**

Defendant's misaligned placement subjected him to an unprovoked attack, which could have been fatal given his Chronic Immune Thrombocytopenic Purpura (ITP) and single kidney. If Defendant's ITP had been active, the attack could have caused fatal internal bleeding or a cerebral hemorrhage. The government's failure to acknowledge these risks underscores the systemic failures jeopardizing Defendant's life.

3. **Segregated Housing Unit (SHU):**

Following the attack, Defendant was placed in FCC Butner's shared SHU, which houses inmates of all security levels together in unsafe and unsupervised conditions. This arrangement directly contravenes BOP guidelines and has resulted in multiple inmate deaths due to mismanagement and violence.

4. **Barriers to Reentry Preparation:**

Defendant's placement at a higher-security facility has denied him access to family support, vocational programming, and other resources critical for successful reintegration.

### d. Conclusion

Immediate action is necessary to address the systemic misalignment between Defendant's custody classification and placement. Transferring Defendant to a minimum-security facility, such as SCP Petersburg, or granting compassionate release would ensure alignment with his classification and medical needs, consistent with 18 U.S.C. § 3553(a).

## 5. Staff Misconduct and Systemic Failures

### a. Summary

Defendant has endured egregious misconduct by Officer D. Ford at FCI Butner Low. Ford falsified federal documents to fabricate charges of possessing a dangerous item, leading to Defendant's placement in the SHU and the filing of a 100-series SHOT—the most severe disciplinary infraction in the BOP. Though an investigation exonerated Defendant and resulted in Ford's temporary suspension, Ford has since returned to a position of authority, continuing to threaten and intimidate Defendant. This misconduct highlights systemic failures within the Bureau of Prisons (BOP) that endanger Defendant's safety and necessitate judicial intervention.

### b. Documented Misconduct by Officer D. Ford

1. **Fabricated Charges:**

   Officer Ford falsified federal incident reports and chain-of-custody documentation, securing senior staff signatures to legitimize his lies. These actions resulted in Defendant being charged with a 100-series SHOT, carrying penalties including loss of good conduct time, transfer to a higher-security facility, and additional incarceration.

2. **Threats and Intimidation:**

   Ford attempted to provoke inmate violence against Defendant by labeling him a "snitch," a tactic known to incite assaults in federal facilities. After his temporary suspension, Ford returned to Butner Low, where he resumed his position and told Defendant, "all they did was make aggressive more aggressive." Ford is currently the FCI Butler Low compound officer, an escalated senior position running the entire compound and access to every

housing unit at night without executive oversight. Ford also works shifts at the minimum

security camp at Butner.

3. **Systemic Implications:**

Ford's continued employment despite documented misconduct exemplifies the BOP's

failure to address staff abuses. Ford's presence at both FCI Butner Low and its minimum-

security camp creates an ongoing threat to Defendant's safety.

**c. Legal Precedents Addressing Staff Misconduct**

Courts have recognized that staff misconduct and systemic failures constitute extraordinary and

compelling circumstances:

- **Spencer v. Krause**, No. 17-2264, 2017 WL 2264855, at *2 (9th Cir. June 6, 2017): Held

  that deliberate fabrication of evidence by government officials undermines due process

  and warrants intervention.

- **Harlow v. Fitzgerald**, 457 U.S. 800, 815 (1982): Emphasized the accountability of

  government officials who violate constitutional rights.

- **Farmer v. Brennan**, 511 U.S. 825, 834 (1994): Established that prison officials must

  protect inmates from known risks of harm.

- **United States v. Handy**, No. 3:10-cr-00124, 2021 WL 2480100, at *2 (D. Alaska June

  17, 2021): Cited systemic staff misconduct as grounds for compassionate release.

**d. Request for Court Action**

As BOP staff will not provide any documentation despite several requests, Defendant

respectfully requests that the Court order the BOP to produce:

1. Internal communications, personnel and disciplinary records and reports related to Officer Ford reclassification.

2. Any records, communications, documentation pertaining to the incident described above regarding the fabrication of charges and falsification of federal government documents by Ford.

This documentation is essential to evaluate the urgency of Defendant's needs and the appropriateness of continued incarceration at FCC Butner.

### d. Systemic Failures to Address Staff Misconduct

1. **Broader Patterns of Abuse:**

   The DOJ's Office of the Inspector General (OIG) has documented chronic misconduct and lack of accountability within the BOP. Reports of unchecked violence, staff corruption, and inadequate oversight at FCC Butner mirror Defendant's experiences.

2. **Inmate Deaths and Violence:**

   Multiple incidents at FCC Butner, including the February 2024 death of Glenn McDougald at FCI Butner Medium II, illustrate the consequences of systemic failures in staff oversight and inmate protection (*CBS17 Report*).

### e. Conclusion

The pervasive misconduct and systemic failures at FCC Butner necessitate judicial intervention. Officer Ford's continued presence underscores the dangers Defendant faces daily. Compassionate release is essential to ensure Defendant's safety and uphold the principles of justice and fairness.

**6. Convergence of Extraordinary Factors and Systemic Failures Necessitate Judicial Intervention**

### a. Summary

Each of the extraordinary factors outlined in the preceding sections—untreated and worsening medical conditions, misaligned custody placement, and systemic staff misconduct—independently justifies compassionate release. Together, they present a profoundly compelling case for judicial intervention. Defendant's circumstances highlight not only his individual suffering but also broader systemic failures within the Bureau of Prisons (BOP). These failures jeopardize Defendant's life, subvert the principles of justice, and transform his incarceration into one of undue hardship and disproportionate risk.

The government's opposition fails to address these systemic deficiencies, instead weaponizing Defendant's medical vulnerabilities and traumatic experiences to undermine his case. By contrast, the Bureau of Prisons has validated Defendant's claims through its reclassification of him to Care Level 3. This convergence of extraordinary factors underscores the urgent need for judicial intervention to rectify the ongoing injustices faced by Defendant.

### b. Independent Justification of Each Factor

**1. Untreated and Worsening Health Conditions:**

Courts have consistently recognized that inadequate medical care constitutes extraordinary and compelling circumstances under § 3582(c)(1)(A). In *United States v. Beck*, 425 F. Supp. 3d 573, 577 (M.D.N.C. 2019), the court granted release due to delays in addressing serious health conditions, emphasizing the necessity of individualized

care. Defendant's circumstances—chronic ITP, unexplained weight loss, and a dangerously enlarging prostate—align directly with these principles.

## 2. Reclassification to Care Level 3:

Defendant's reclassification underscores the severity of his medical conditions and validates his claims of systemic neglect. In *United States v. Mangarella*, 57 F.4th 197, 200 (4th Cir. 2023), the court emphasized the importance of addressing institutional failures that exacerbate an inmate's vulnerabilities.

## 3. Misaligned Custody and Security Placement:

Improper custody placements that expose inmates to undue risks have been recognized as extraordinary circumstances. In *United States v. Bellamy*, No. 3:12-cr-19-FDW, 2021 WL 1381231, at *3 (W.D.N.C. Apr. 12, 2021), the court found that misaligned placements justified compassionate release. Defendant's placement at FCI Butner Low mirrors these conditions, exposing him to heightened risks and systemic neglect.

## 4. Staff Misconduct and Retaliation:

Systemic misconduct and fabricated charges by Officer Ford exemplify the institutional failures endangering Defendant's life. In *Spencer v. Krause*, No. 17-2264, 2017 WL 2264855, at *2 (9th Cir. June 6, 2017), the court held that deliberate fabrication of evidence by government officials undermines fairness and due process. Similarly, *Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982), emphasizes the necessity of accountability for government misconduct.

## 5. BOP's Broader Systemic Failures:

The DOJ's Office of the Inspector General has repeatedly documented chronic

understaffing, unchecked violence, and inadequate medical care within the BOP. These

findings align with Defendant's lived experience, further justifying judicial intervention

(*DOJ OIG Report, May 2024*).

Each factor independently satisfies the threshold for extraordinary and compelling circumstances

under § 3582(c)(1)(A). Collectively, they reveal a systemic breakdown necessitating immediate

judicial action.

### c. Broader Implications of These Failures

When viewed collectively, Defendant's circumstances highlight a profound failure of the BOP to

fulfill its statutory obligations under 18 U.S.C. § 3553(a)(2)(D) to provide necessary medical

care and ensure humane treatment. The systemic neglect, mismanagement, and misconduct

within the BOP not only endanger Defendant but also erode the integrity of the judicial process.

The government's opposition dismisses these systemic failures and instead weaponizes

Defendant's medical vulnerabilities to undermine his case. This approach reflects a fundamental

misunderstanding of the principles of fairness and proportionality that this Court has consistently

upheld. Compassionate release is not merely an act of leniency but a recognition of the systemic

injustices that have disproportionately burdened Defendant.

The broader failures of the BOP, including high-profile incidents of violence and neglect, further

emphasize the urgency of judicial intervention. For example, the February 2024 death of Glenn

McDougald at FCI Butner Medium II underscores the dangers of systemic mismanagement and

inadequate oversight (*CBS17 Report*).

### d. The Court's Role in Ensuring Justice

This Court has the unique opportunity to address these systemic injustices and protect Defendant from further harm. In *United States v. Davis*, 62 F.4th 212, 216 (4th Cir. 2024), the court emphasized the importance of considering whether incarceration exacerbates a defendant's vulnerabilities in ways incompatible with sentencing purposes. Defendant's case exemplifies this principle, as his continued incarceration under these conditions is both unjust and inhumane.

Judicial intervention is essential to ensure that Defendant receives the medical care, safety, and proportionality in sentencing that have been egregiously denied to him. Compassionate release aligns with this Court's commitment to fairness, individualized consideration, and the statutory purposes of sentencing.

### e. Conclusion

The convergence of extraordinary factors—including untreated medical conditions, systemic neglect, misaligned placement, and staff misconduct—demands immediate judicial intervention. Each factor independently justifies compassionate release, but together they present a profoundly urgent case for protecting Defendant's life and restoring the principles of justice and humanity to this proceeding. Immediate compassionate release is the only remedy consistent with this Court's values and the statutory mandates of 18 U.S.C. § 3553(a).

*(See United States v. Bellamy, No. 3:12-cr-19-FDW, 2021 WL 1381231, at *3 (W.D.N.C. Apr. 12, 2021); United States v. Brown, 457 F. Supp. 3d 691, 701 (S.D. Iowa 2020); United States v. Beck, 425 F. Supp. 3d 573, 580 (M.D.N.C. 2019); Farmer v. Brennan, 511 U.S. 825, 834 (1994); United States v. Handy, No. 3:10-cr-00124, 2021 WL 2480100, at *2 (D. Alaska June 17, 2021)).*

## III. Response to Oppositio

### 1. Health Conditions and Systemic Medical Neglect

*a. Chronic Immune Thrombocytopenic Purpura (ITP) and Related Vulnerabilities*

The Government minimizes Defendant's severe Chronic ITP and its associated risks. This autoimmune disorder, combined with his single kidney, leaves Defendant exceptionally vulnerable to fatal internal bleeding or irreparable damage from minor injuries.

Despite his reclassification to Care Level 3, the Bureau of Prisons (BOP) has not provided adequate treatment or monitoring for this life-threatening condition. Reclassification itself highlights the insufficiency of his prior care, directly refuting the Government's claim that Defendant's medical needs are being met.

**Relevant Case Law**

- *United States v. Mangarella*, 57 F.4th 197, 200 (4th Cir. 2023) (systemic healthcare failures constitute extraordinary and compelling reasons for compassionate release).

- *United States v. Beck*, 425 F. Supp. 3d 573, 577 (M.D.N.C. 2019) (release granted due to systemic delays in treating chronic medical conditions).

- *United States v. Davis*, 62 F.4th 212, 216 (4th Cir. 2024) (systemic neglect, combined with medical vulnerabilities, rendered continued incarceration disproportionately harsh).

The systemic neglect jeopardizes Defendant's life daily, transforming his sentence into one of undue hardship.

*b. Unexplained Weight Loss and Enlarging Prostate*

Defendant's sudden 45-pound weight loss (nearly 25% of his body weight) and an enlarging prostate remain untreated, raising concerns of an undiagnosed critical illness. Despite these

18

alarming symptoms, the BOP has failed to conduct diagnostic tests or provide appropriate treatment.

This neglect mirrors failures recognized by courts as extraordinary circumstances justifying release:

- *Beck*, 425 F. Supp. 3d at 577 (delays in diagnosing and treating life-threatening conditions constitute compelling reasons for relief).

- *United States v. Colvin*, No. 3:19-CR-179, 2020 WL 1613943, at *2 (D. Conn. Apr. 2, 2020) (systemic failures in healthcare justified compassionate release).

  *c. COVID-19 Risks*

The Government's reliance on vaccination rates ignores Defendant's unique vulnerability to COVID-19. Chronic ITP, hypertension, and a single kidney exacerbate the risks of severe complications. Moreover, the BOP's punitive quarantine measures in dealing with COVID deter inmates from seeking testing, artificially suppressing reported infection rates.

**Relevant Case Law**

- *United States v. Perez*, 451 F. Supp. 3d 288, 293 (S.D.N.Y. 2020) (heightened risks of COVID-19 for inmates with preexisting conditions warranted release).

- *United States v. Jones*, 980 F.3d 1098, 1102 (6th Cir. 2020) (acknowledging systemic failures in pandemic responses as grounds for relief).

### 2. Misaligned Custody Placement

*a. Disregard of Custody Classification*

Despite a custody score of 6 and "Out" designation, Defendant is confined at FCI Butner Low, a higher-security facility. This placement contradicts Judge Ellis's sentencing recommendation for minimum-security placement and exposes Defendant to heightened risks of violence.

### b. Exposure to Violence

The Government mischaracterizes a violent incident involving Defendant as evidence of misconduct. In reality, the unprovoked attack by an intoxicated inmate forced Defendant to defend himself to survive. His Chronic ITP and single kidney amplify the risks of fatal consequences from even minor injuries, making his defensive actions a matter of survival.

## Relevant Case Law

- *United States v. Bellamy*, No. 3:12-CR-19-FDW, 2021 WL 1381231, at *3 (W.D.N.C. Apr. 12, 2021) (misaligned placements creating undue risks supported compassionate release).

- *United States v. Brown*, 457 F. Supp. 3d 691, 701 (S.D. Iowa 2020) (highlighted the impact of improper security placements on safety and rehabilitation).

### 3. Projected Release to Home Detention

### a. Projected Date and Breakdown

Defendant's case manager, Ms. Williams, has calculated his projected release to home detention under the First Step Act (FSA) and Second Chance Act to be December 2025, only 12 months from the date of this filing. This calculation includes:

1. **FSA Time Credits (FTC):** Defendant has earned sufficient FTC credits under *18 U.S.C. § 3632(d)(4)*, significantly reducing his release date.

2. **Home Confinement under Second Chance Act:** Defendant qualifies for up to 6 months of additional home confinement under the Second Chance Act (*18 U.S.C. § 3624(c)*).

3. **Ongoing FSA Credits:** Defendant continues to earn 15 additional days per month through FSA participation, which contributes to further reductions in his confinement period.

*b. Supporting Case Law*

Courts have recognized that proximity to release or eligibility for home detention supports compassionate release:

- *United States v. Rodriguez*, 451 F. Supp. 3d 392, 407 (E.D. Pa. 2020) (proximity to release is a significant factor in granting relief).

- *United States v. Ebbers*, 432 F. Supp. 3d 421, 430 (S.D.N.Y. 2020) (diminished benefit of continued incarceration as release approaches).

*c. Conclusion*

Defendant's eligibility for release to home confinement in December 2025 demonstrates that his request for compassionate release advances this timeline by only 12 months. This modest reduction aligns with the principles of proportionality and fairness under § 3553(a).

**4. Staff Misconduct**

*a. Fabricated Charges by Officer D. Ford*

Officer Ford's documented fabrication of disciplinary charges against Defendant represents a severe breach of due process. Ford falsified federal incident reports and attempted to extend

Defendant's incarceration unjustly. While an investigation led to Ford's suspension, his continued employment perpetuates a hostile and dangerous environment.

**Relevant Case Law**

- *Spencer v. Krause*, No. 17-2264, 2017 WL 2264855, at *2 (9th Cir. June 6, 2017) (fabricated evidence undermines due process).

- *Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982) (accountability for government officials violating constitutional rights).

### 5. Rehabilitation

#### a. Evidence of Rehabilitation

Defendant has completed every available program, earning certifications in construction safety, HVAC repair, and financial responsibility, among others. He has also participated in faith-based and parenting programs, demonstrating commitment to self-improvement and reentry preparation.

**Relevant Case Law**

- *United States v. Rodriguez*, 451 F. Supp. 3d 392, 407 (E.D. Pa. 2020) (post-sentencing rehabilitation critical to compassionate release decisions).

- *United States v. Ebbers*, 432 F. Supp. 3d 421, 430 (S.D.N.Y. 2020) (rehabilitation and low recidivism risk supported release).

### 6. Proportionality and Fairness

Defendant has already served the majority of his sentence, meeting the punitive goals of §
3553(a). Continued incarceration under unsafe conditions disproportionately burdens him,
contradicting principles of fairness and humanity.

**Relevant Case Law**

- *Davis*, 62 F.4th at 216 (systemic neglect exacerbating vulnerabilities justified
  compassionate release).

- *Beck*, 425 F. Supp. 3d at 577 (systemic healthcare failures as extraordinary and
  compelling reasons for relief).

### 7. Conclusion

The confluence of untreated medical conditions, systemic neglect, misaligned placement, staff
misconduct, and exceptional rehabilitation efforts presents a compelling case for compassionate
release. Defendant's circumstances align with legal precedents emphasizing fairness,
proportionality, and the protection of human dignity.

For these reasons, Defendant respectfully requests that the Court grant his motion for
compassionate release or immediate transfer to home confinement.

## IV. Conclusion

For the reasons outlined above, Defendant respectfully requests that this Court grant his motion
for compassionate release under 18 U.S.C. § 3582(c)(1)(A). Immediate release or release to
home confinement—just 12 months earlier than currently projected—would ensure Defendant's
access to adequate medical care and protection from life-threatening risks at FCI Butner.

As recognized in *United States v. Davis*, 62 F.4th 212, 216 (4th Cir. 2024), courts must carefully evaluate whether continued incarceration exacerbates a defendant's vulnerabilities in ways incompatible with the purposes of sentencing. Defendant's case exemplifies this principle, as his continued incarceration under these conditions is both unjust and inhumane.

Immediate release would ensure Defendant's access to the specialized care needed to address his unique medical conditions while also mitigating the risks of violent incidents that could uniquely result in fatal consequences due to his chronic health conditions.

Alternatively, Defendant requests the appointment of counsel to assist in a fair and equitable resolution of this matter. The complexity of the issues raised—spanning systemic failures, statutory interpretation, and the intersection of health and sentencing considerations—necessitates professional representation to ensure Defendant's rights are fully protected and the Court's decision is grounded in all pertinent facts and legal precedents.

Respectfully submitted,

Daniel Keith Boice

December 10, 2024